**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

WANDA SÁNCHEZ-ARROYO, ET AL.,

     *Plaintiffs,*

        v.

DEPARTMENT OF EDUCATION OF THE
COMMONWEALTH OF PUERTO RICO, ET
AL.,

     *Defendants.*

CIV. NO. 10-2083 (PG)

---

**OPINION AND ORDER**

Plaintiffs Wanda Sánchez Arroyo ("Sánchez"), her spouse José Ramos-Dieppa ("Ramos"), and the conjugal partnership established between them, have brought this action against the Puerto Rico Department of Education ("DOE") and several individual defendants, namely: Jesus Rivera-Sánchez ("Rivera-Sánchez"), Odette Piñeiro Caballero ("Piñero"), Carlos E. Chardón ("Chardón"), Brenda Virella Crespo ("Virella"), Edward Moreno-Alonso ("Moreno-Alonso"), José Morales Rivera ("Morales-Rivera") and Elia Colón-Berlingeri ("Colón-Berlingeri")(hereinafter collectively referred to as "Defendants").[1] In her complaint, Sánchez, who is a current employee of the DOE, asserts that Defendants discriminated against her on the basis of her age, mental condition and gender, as well as subjected her to harassment and a hostile work environment as punishment for speaking out publicly against Defendants' alleged political discrimination practices. The matter is before the Court on Defendants' motion to dismiss. Docket No. 36. Because the Court finds it lacks jurisdiction to entertain most of Sánchez's claims, it dismisses all of her claims except her First Amendment claim. Defendants' motion to dismiss is thus **GRANTED IN PART AND DENIED IN PART.**

       **I.    Background**

  **A.   Procedural Background**

On November 4, 2010 Sánchez filed the instant complaint, where she alleges that Defendants illegally discriminated against her on the basis

---

[1] All Defendants are sued in their individual and official capacities.

of her age, mental condition and gender. Docket No. 1. She claims said
acts by Defendants constitute violations of her rights under Title VII of
the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"),
Titles I and II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.
§§ 12111, *et seq.;* and 42 U.S.C. §§ 12115, *et seq.*, and the Age
Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"). Sánchez also
advances claims under Section 1983 of the Civil Rights Act, 42 U.S.C. §
1983, which are predicated on Defendants' alleged violations of her
rights under the First Amendment, Due Process and Equal Protection
Clauses of the Fourteenth Amendment to the United States Constitution.
Lastly, she claims the events recounted in her complaint also give rise
to violations of Sections 1, 4, 6 and 7 of Article II of the Constitution
of Puerto Rico, the Public Service Personnel Laws of Puerto Rico and its
merit system regulations, Law No. 184 of August 3, 2004, as well as
articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit.
31, §§ 5141-42.

On June 24, 2011 Defendants filed the pending motion to dismiss,
seeking dismissal of Plaintiffs' complaint for failure to state a claim,
comply with the applicable statute of limitations and/or exhaust
administrative remedies. See Docket No. 36. Plaintiffs failed to file a
timely response to said motion, and thus the Court deemed it as
unopposed. Docket No. 45. Plaintiffs sought reconsideration from the
order, which the Court denied on October 5, 2011. Docket No. 48.

### B.   Factual Background

The Court draws the following facts from Plaintiff's complaint and
takes them as true for the purpose of resolving Defendants' motion to
dismiss.

Sánchez is a 55 year old disabled woman that is a member of the New
Progressive Party ("NPP"),[2] fact known to Defendants at all times
relevant to this action, especially given the highly politically charged
environment that exists at the DOE.

Her active membership in the NPP includes, without limitation,
active participation in the 2004 and 2008 electoral campaign, and

---

[2] The New Progressive Party is the political party that favors statehood for
Puerto Rico.

attendance to different political meetings, parties, seminaries, conventions, among others and contributing in fundraising for the NPP.

Sánchez has been an employee of the DOE since August 23, 1976. At this time she occupies the career position of "Auxiliary Superintendent Reg. V."

On September 2008, Sánchez was diagnosed with major depression. The Puerto Rico State Insurance Fund (SIF) diagnosed her with a disability for an emotional condition related to her working environment that she was subjected to by co-defendant Morales-Rivera.[3] As a direct consequence of the mental and emotional state and the treatment that she was subjected to, Sánchez has a limited ability to perform her daily activities. For said reasons she has requested reasonable accommodations with her employer DOE who has failed to take the necessary measures to reasonably accommodate said emotional condition. If a reasonable accommodation was afforded by DOE, Sánchez would be able to perform her duties and functions of her position. She requested to be located in an area where co-defendant Morales-Rivera could not continue to harass her.

On January 5th, 2009 Sánchez was named Special Aide in the Special Education Division, effective February 5th, 2009 by co-defendant Chardón.[4] On January 7th, 2009 she was appointed Interim Regional Director of the Caguas School Region, effective January 8th, 2009 also by Defendant Chardón.

On January 30th, 2009 co-defendant Moreno-Alonso,[5] the Administrative Sub-Secretary, sent a letter to Sánchez informing her that she was being reinstated to her position as Auxiliary Superintendent in the Cidra School District, leaving without effect the assignment as Interim Director of the Caguas Educational Region. During this time, when Sánchez was removed from her appointment as Regional Director of the Caguas School Region, she sent a letter to co-defendant Chardón with regards to an alleged investigation that gave basis for her destitution

[3] Morales-Rivera was the Special Assistant to former Superintendent Rivera-Sánchez in the DOE. In said capacity he had authority over the plaintiff. He was appointed by co-defendant Chardón to this position. Compl. ¶ 15.
[4] Defendant Chardón was a former Secretary of the DOE. In said capacity he was the nominating authority of said Agency. Compl. ¶ 12.
[5] Defendant Moreno-Alonso was the Associate Secretary in the DOE. He was appointed by Chardón to his position. He is currently the Secretary of the DOE. Compl. ¶ 14.

due to some information provided by an anonymous person. Sánchez requested that she continue as Regional Director, pending the investigation. Chardón then sent a notification on February 2009 appointing her to the Comerio School District, a school district that is outside her residence and her career position, distant from Cidra and Caguas.

On or around February, 2009, Sánchez started notifying the DOE of the illegal use of equipment by defendant Moreno-Rivera[6] and his harassing and hostile attitude against Plaintiff and other of his subordinates. No action was taken against Moreno-Rivera demonstrating either a concerted effort on the part of the Defendants to ignore her valid complaints or a reckless disregard for her situation.

During this time the DOE was under the supervision of the federal government due to irregularities in the school system; the DOE informed that they had identified school directors that were performing Auxiliary Superintendent functions in the DOE, and in order to maximize the DOE resources they would relocate them in the Director positions for the remainder of the school year. Little did they know that the DOE and the Defendants used this as a pretext to create a trust position called "staff developers" that had the exact duties as an Auxiliary Superintendent, in order to accommodate people from their same political affiliation, NPP, and discriminate and marginalize supporters of the Popular Democratic Party (PDP).[7]

Defendants requested Plaintiff in multiple occasions, to take adverse employment actions against employees of the DOE under her supervision that are affiliated to the PDP, the opposing Political party of the current administration. At all times, Plaintiff has refused to take any of the requested adverse employment actions and has publicly reported her superiors because of their discriminatory behavior against employees of the DOE for their political affiliation to the PDP.

On July 29th, 2009 Plaintiff participated at a meeting with co-

---

[6] No one named "Moreno-Rivera" appears as a defendant in this case. Thus, it is unclear to the Court whether this refers to defendants Moreno-Alonso or Morales-Rivera.

[7] The PDP is the political party that favors the current political status of Puerto Rico.

defendants Chardón, Virella-Crespo[8] and Moreno-Rivera. Virella-Crespo alleged that the position of Special Aide was not a trust position, that it was afforded a salary differential and not a salary raise. Notwithstanding, Sánchez explained to Defendant Virella-Crespo that in the DOE all the Special Aide positions are of trust. During that same meeting Sánchez requested the investigation of a list of illegal personnel transactions that were taking place at the DOE. All the other Defendants present at the meeting ignored her valid complaints in a concerted effort to discriminate and marginalize her. These actions are one more effort to retaliate, discriminate, marginalize and harass against Sánchez.

Sánchez has always received excellent evaluations, notwithstanding, Defendants, including Virella-Crespo, have started a harassment campaign against her because of her age, emotional condition, her request for reasonable accommodations and her opposition to the political discriminatory practices of the Defendants.

Sánchez has been subject to five (5) transfers since January 2009, she has been denied her right to receive her list of her duties and responsibilities, with the sole intent to harass her and make her working conditions more difficult. The multiple transfers have also affected her ability to receive medical treatment for her disability.

On August 5, 2009 Sánchez was sent in administrative special assignment ("*destaque*") as School Director at Josefa Pastrana School in Aguas Buenas. She was assigned to this school even when the school already had a Director assigned. For said reason Sánchez did not have an office assigned to her and she was placed in an area that lacked among other things a telephone, records, and office equipment, all of which are necessary to carry out her functions, and all this in an effort to make her fail in her duties.

August 24, 2009 Sánchez made a written request that she be moved from her administrative *destaque* from Josefa Pastrana School in the Aguas Buenas District to the Luis Munoz Rivera School that was located in her Cidra School District.

Defendants have violated the rules and regulations of the DOE by

---

[8] Defendant Virella-Crespo is the Director of Human Resources of the DOE. She has authority over the Plaintiff. Compl. ¶ 13.

assigning Sánchez to a place of work that is outside her residence and/or where her career position is located. These positions have been filled by younger male employees, in a clear discrimination for Plaintiff's age and gender.

Defendants have constantly made derogatory and discriminatory comments relating to her age, her disability and reasonable accommodations requests, as well as disparaging comments because of her medical appointments and her requests for leave in the State Insurance Fund. Discriminatory comments were also made because of the refusal to participate in the discriminatory activities against the PDP employees.

On September 2, 2009 Defendant Chardón, then Secretary of the DOE, sent a letter stating that Sánchez had failed to report to work on a full time basis and threatening her with insubordination charges, all this in an effort to harass her. Sánchez objected and rejected the letter on September 21, 2009 stating her functions and work schedule during that time, this letter was sent to Chardón and Virella-Crespo; also a copy to Mr. Hilton Mercado (Director of the Legal Division) and defendant Moreno-Alonso. No action was taken after this letter was sent.

Defendants have denied Sánchez her multiple requests for reasonable accommodation and have threatened her with charges of insubordination and/or the filing of a case for abandonment of the work area, even threatening her with employment termination.

Defendants have imposed unreasonable terms and conditions in her work environment in order for her to fail or to force a resignation.

From September 2, 2009 until September 15, 2009 Plaintiff was partially hospitalized at the First Hospital Panamericano due to her emotional condition.

On September 21, 2009 Sánchez made an official complaint at the Puerto Rico Comptroller's Office reporting irregularities in the use of property and funds by members of the Caguas Educational Region, including co-defendant Morales-Rivera. She denounced that equipment and time was being used for political activities and personal business activities, as well as of the fact that Defendant Morales-Rivera used his position to harass and persecute his subordinates. The Comptroller's Office started an investigation in that region, prompting even more retaliation and harassment from the Defendants, in attempt to quiet Sánchez.

On October 29, 2009 Sánchez requested once more intervention from the DOE, this time from Attorney Hilton Mercado, denouncing the irregularities in the recruiting process in the Caguas School Region. No action was taken by the Defendants other than continuing the pattern of harassment and retaliation against Plaintiff.

October 30, 2009 Sánchez sent a letter to Chardón stating the negative working conditions she had been subjected to that required a reasonable accommodation as recommended by her doctor due to her emotional condition that she had developed by the actions taken against her by Defendants Chardón, Virella-Crespo, Moreno-Alonso and Morales-Rivera.

Even when her performance has always been of excellence, since her public outcry for the political discrimination taking place at the DOE, Plaintiff has been subject to constant criticism and reprimands for her performance, based on false and unjustified reasons.

Sánchez has been reprimanded and prohibited from visiting the schools in order to perform her functions, all in an attempt to have her resign her position due to the constant harassment and persecution. She has continued to stride for excellent work even under these circumstances.

Sánchez was stripped of her functions by Defendant Morales-Rivera by naming two (2) persons to one position, no duties or responsibilities were assigned to her until the situation was supposedly solved by Human Resources, the situation is yet to be corrected.

Co-defendant Morales-Rivera authorized a lower ranking and seniority and gives Sánchez instructions in a continuous effort to humiliate and harass Plaintiff.

Defendant Morales-Rivera purposely does not notify Sánchez of DOE memorandums and communications, even to the extent of intercepting the letters and communications sent to her from other schools and teachers and holding up meetings. Defendants have excluded her from trainings, workshops and meetings that her subordinates participate in. All in an attempt to make Sánchez fail in her functions, marginalize her and/or force her resign.

Sánchez hasn't even been able to register her attendance electronically as the other personnel and has been subject to submitting

her attendance manually; giving room to discrepancies that can affect her paycheck or her personnel file, this in clear violation to the valid regulations in the DOE. A situation that is substantially inferior to the norm in the DOE.

Sánchez has reported all the discrimination, harassment and pressure she has been subjected to from Defendants for her age, gender, mental and emotional condition, reasonable accommodation requests and her opposition to participate in politically discriminatory practices to the proper venues within the DOE, to no avail. On September 2, 2010 Sánchez requested a relocation of Morales-Rivera to Defendant Rivera-Sánchez[9] that has yet to be answered.

The DOE has knowledge of all the comments, hostile environment to which Sánchez has been subjected to but not only has failed to do something about it, it has promoted and allowed the discrimination, harassment and pressure against her to continue to this day.

The discriminatory actions from Defendants have escalated ever since Sánchez formally complained about the harassment she has been subjected to.

She was so taken aback by the actions taking place in the DOE with the Defendants, that she provided and interview with *El Nuevo Día*[10] on December 9, 2009, publicly denouncing the situation taking place with the auxiliary superintendents that were being discriminated against because of their political affiliation to the PDP, in an effort to appoint NPP supporters in said positions.

February 19, 2010 Sánchez made another request for reasonable accommodation to co-defendant Piñeiro, Secretary of the DOE, but once more her request was ignored.

These actions have caused her emotional and mental condition to deteriorate, a hostile working environment, unbearable working conditions and undue pressure.

All these actions have been for the purpose of discriminating against Sánchez due to her age, gender, disability, retaliation, free speech and reasonable accommodations requests.

---

[9] Defendant Rivera-Sánchez was also a former Secretary of the DOE.
[10] *El Nuevo Día* is a Spanish daily newspaper of wide circulation in Puerto Rico.

Defendants have relentlessly maintained an atmosphere of differing treatment towards Sánchez because of her vocal expressions against the current administration in the hopes that she will resign or a reason can be fabricated to terminate her from her career position.

Also, the Defendants are motivated by the public expressions made by Sánchez to the local press with regards to the impact Law 7 and the relocation of the Auxiliary Superintendents would have on the DOE and the services it could provide.

Indeed, the DOE has been the subject of much coverage by the public given the impact it has on the services to be provided to the children of Puerto Rico.

Indeed the DOE's administration has had to acknowledge the very item spoken about by Sánchez and the negative impact the layoffs have on the services that DOE provides.

Because of the public statements by Sánchez, this has motivated the defendants to subject her to discrimination, retaliation and harassment.

Her age, gender and/or Sánchez's public expressions that has motivated and continues to motivate all of the defendants to conspire, order (either deliberately or negligently) and/or with deliberate indifference allowed the adverse employment acts perpetrated on her.

The Defendants, acting separately and/or collectively, either willfully or negligently, have caused all of her economic and emotional harm.

All of Defendants' actions are merely a pretext to discriminate and retaliate against Sánchez.

The Defendants' acts of discrimination have caused Sánchez injury as well as to her spouse and the conjugal partnership created between them.

Sánchez's spouse, co-plaintiff Ramos-Dieppa, has been forced to witness the deterioration of the mental health of his spouse and this has caused anxiety in him as the mounting harassment has forced him and Sánchez to reorder their lives as to brace for the tragic day if this Honorable Court does not intervene.

Co-defendants Rivera-Sánchez, Piñero-Caballero, Chardón, Mercado-

Hernández,[11] Virella-Crespo, and Morales-Rivera utilized their positions under the color of law and either instructed, conspired and/or were deliberately indifferent to the acts perpetrated on Sánchez because of the political animus towards her and/or public statements. Their actions are unconstitutional, tortious and as such must be responsive to the injuries caused to the plaintiff and her spouse.

This is another clear example of the discrimination and lack of concern of the past and present administration of the DOE to do was is correct and what is needed to be done and that is to reinstate the plaintiff to her position and to stop the discrimination that she has objected to.

## II.  Standard of Review

Motions to dismiss brought under FED. R. CIV. P. 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994). Firstly, when ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). Additionally, courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks omitted).

In determining whether dismissal of a complaint is appropriate pursuant to Rule 12(b)(1) or 12(b)(6), the court must keep in mind that "[t]he general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief.... this short and plain statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." Gargano v. Liberty Intern.

---

[11] Legal Adviser Hilton Mercado-Hernández has not been named as a defendant in this case, hence the Court will ignore Plaintiffs' mention of him.

Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (internal citations and quotation marks omitted). Nevertheless, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has ... held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12  (1st Cir. 2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... ." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Iqbal, 129 S.Ct. at 1960). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernández, 640 F.3d at 9 (citing Iqbal, 129 S.Ct. at 1951).

When evaluating the plausibility of a legal claim, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely." Ocasio-Hernández, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556). Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernández, 640 F.3d at 13.

### III. Discussion

#### A. Title VII, Title I of the ADA, and ADEA claims

Defendants argue that Sánchez's claims under Title VII, Title I of the ADA, and ADEA should be dismissed because: (1) Sánchez has failed to exhaust her administrative remedies before the filing of her complaint; (2) such claims are time-barred; and (3) Sánchez has failed to plead sufficient facts to establish plausible claims upon which relief can be granted under those statutes.

#### i.    Failure to Exhaust Administrative Remedies

##### 1. *Title VII (gender discrimination)*

The Court agrees with Defendants that Sánchez has failed to plead exhaustion of administrative remedies for her Title VII claims. Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court. See Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003)(citing Jensen v. Frank, 912 F.2d 517, 520 (1st Cir. 1990)). A plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door. Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). Exhaustion has two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency. Id. Sánchez has not pleaded that she complied with these two components, or otherwise recited a valid excuse for failing to do so. As such, her claims under Title VII cannot go forward before this Court, and the same must be **DISMISSED.**

##### 2. *ADA Title I*

Sánchez also advances claims under Title I of ADA, which she argues entitles her to relief against Defendants' alleged discriminatory

practices and their failure to accommodate. The First Circuit has held that the ADA mandates compliance with the administrative procedures specified in Title VII. Bonilla v. Muebles J.J. Alvarez, 194 F.3d 275, 277 (1st Cir. 1999). Absent "special circumstances," a plaintiff must comply with said administrative procedures before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA. Id. What this boils down to is that "a claimant who seeks to recover for an asserted violation of Title I of the ADA, like one who seeks to recover for an asserted violation of Title VII, first must exhaust administrative remedies by filing a charge with the EEOC, or alternatively, with an appropriate state or local agency, within the prescribed time limits." Id. at 278; 42 U.S.C. §2000e-5(e).

Sánchez has failed to plead that she exhausted the administrative remedies available to her as redress for the facts alleged in her complaint. Neither has she argued any special circumstances, such as equitable tolling, that would exempt her from running the administrative gauntlet. Accordingly, her claims under Title I of the ADA must be **DISMISSED** as this Court lacks subject matter jurisdiction to entertain them.

> *3. ADEA*

Likewise, Defendants argue that Sánchez's asseverations of age discrimination under the ADEA should also be dismissed for failure to exhaust the administrative remedies available to her. The Court agrees. The ADEA states in part that

> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
> (A) within 180 days after the alleged unlawful practice occurred; or
> (B) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d)(1). It follows that compliance with this administrative protocol is a necessary precondition to sue, and "such compliance must occur before a federal court can entertain a suit that seeks recovery for an alleged violation of the ADEA." Tapia-Tapia v.

<u>Potter</u>, 322 F.3d 742, 744 (1st Cir. 2003).

Sánchez has again failed to plead that she complied with the necessary procedural requirements for bringing her ADEA claim. She has also neglected to state any reason that could potentially exempt her from such requirements. As a result, her demands under the ADEA cannot proceed any further before this forum.

### ii.   Timeliness of claims under Title VII, ADA Title I, and ADEA

Having determined that Sánchez's claims under Title VII, Title I of the ADA, and ADEA must be dismissed, the Court is now faced with the task of ascertaining whether said dismissal should be with or without prejudice. As the applicable time period for filing these claims before the administrative forums seems to have elapsed, the Court concludes that most of the claims should be dismissed with prejudice.

Under Title VII, Title I of the ADA, and the ADEA a plaintiff must file an employment-discrimination charge with the EEOC within 300 days of the alleged discrimination. <u>Rivera-Rodríguez v. Frito Lay Snacks Caribbean</u>, 265 F.3d 15, 21 (1st Cir. 2001), <u>abrogated on other grounds by</u> <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002). Because Puerto Rico is a "deferral" jurisdiction, it is the 300 day period that applies to such claims, instead of the 180 day period mentioned in the Title VII and ADEA statutes. <u>See</u> <u>Frederique-Alexandre v. Department of Natural and Environmental Resources</u>, 478 F.3d 433, 437 (1st Cir. 2007).

In her complaint, Sánchez recounts sundry actions taken by the Defendants against her, which she claims constitute the discriminatory practices that give rise to her claims. For example, she states that she has been subjected to five transfers since January 2009, which have been the result of Defendants' attempts to "harass her and make her working conditions more difficult." <u>Compl.</u> ¶ 28. On February 19, 2010, as part of her efforts to obtain a reasonable accommodation for her condition, Sánchez requested a relocation of co-defendant Morales-Rivera, whom she alleges caused her disability. <u>Compl.</u> ¶ 50. After denial of her request, Sánchez again attempted to request reasonable accommodation on September 2, 2010, but it was also to no avail. <u>Compl.</u> ¶ 46.[12] This was the last

---

[12]   Sanchez seems to have pleaded these two requests for reasonable accommodation in reverse chronological order.

discrete discriminatory act alleged by Sánchez in her complaint. As such, Defendants posit that Sánchez's claims stemming from these discrete acts are time-barred, as more than 300 days have elapsed from the date each one of them occurred.

In Morgan, the Supreme Court discussed several of the principles that underpin the filing of administrative charges based on an employer's discrete discriminatory acts, before the EEOC. The Court elucidated the timeliness requirements of the same, stating that

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Morgan, 536 U.S. at 113. For present purposes, it follows that Sánchez was required to file an administrative charge before the EEOC within 300 days of each of the discriminatory acts she complains of. Taking as an example the last discrete act alleged in her complaint, which is the denial of her reasonable accommodation request on September 2, 2010, Sánchez had until June 29, 2011 to file a charge before the EEOC based on that claim. As Sánchez has not hitherto presented any evidence that she has filed any charge before said administrative forum, it follows that all of her claims based on the discrete discriminatory acts alleged in the complaint are foreclosed, and the same must be **DISMISSED WITH PREJUDICE**.

However, the Court is aware that Sánchez seems to have made a hostile work environment claim in her complaint. See Compl. ¶¶ 47 and 51. The Supreme Court in Morgan held that a hostile work environment claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Morgan, 536 U.S. at 117 (citing 42 U.S.C. § 2000e-5(e)(1)). Unlike her claims of gender discrimination and retaliation under Title VII—which stem from separately actionable discrete and discriminatory acts—a hostile work

environment claim sprouts from an unlawful employment practice that "cannot be said to occur on any particular day." Id. at 115. Said practice can be said to "occur over a series of days, or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id.

   The Court notes that Sánchez is still employed by the Department of Education of Puerto Rico, and as a consequence, she may still face subsequent events that, coupled with the ones already averred in her complaint, may further propagate the hostile work environment she complains of. Thus, nothing in this opinion and order is meant to preclude Sánchez from being able to recover from her supposed hostile work environment, as long as she files an administrative charge within 300 days of any of those subsequent events that is still part of the hostile work environment chronicled in her complaint. See id., at 117 ("Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.")

   Accordingly, the Court will only **DISMISS** Sánchez's hostile work environment claims under Title VII, Title I of the ADA, and ADEA **WITHOUT PREJUDICE**.

### iii. Insufficiency of the pleadings

   Next, Defendants request the Court examine Sánchez's pleadings to determine whether they suffice to establish plausible claims under Title VII, Title I of the ADA, and ADEA. The Court, mindful that it lacks subject matter jurisdiction to delve into the merits of these claims, declines to do so. Moreover, the Court has already dismissed most of these claims with prejudice, with the exception of Sánchez's hostile work environment claims, which in any case were left unaddressed by Defendants' motion to dismiss.

   The Court will now saunter over to the next issue: whether Sánchez has made a valid claim under Title II of the ADA.

### B. Title II of the ADA

   In her complaint, Sánchez claims that Defendants' discriminatory actions against her based on her disability also violated Title II of

the ADA. Defendants reply that Title I of the ADA is the exclusive remedy for discrimination claims based on disability in the employment context. Based on this Court's precedent, the Court agrees.

Title II of the ADA states in part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The First Circuit has recognized that the law on whether Title II of the ADA applies to claims of employment discrimination is unclear. Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 17 (1st Cir. 2006). However, this Court has repeatedly held that such claims are within the exclusive province of Title I of the ADA. See Medina-Medina v. Puerto Rico, 769 F.Supp.2d 77, 80 (D.P.R. 2011)(employment discrimination claims may only be brought under Title I); Rodríguez-Velázquez v. Autoridad Metropolitana de Autobuses, 502 F.Supp.2d 200, 206 (D.P.R. 2007)(considering plaintiff's complaint only in the context of Title I after concluding that "the claims under ADA are based exclusively on defendants' alleged failure to grant plaintiff a reasonable accommodation in his work under Title I"); Méndez Vázquez v. Tribunal General de Justicia, 477 F.Supp.2d 406, 412 (D.P.R. 2007)(dismissing employment discrimination claim under Title II because such claims can only be brought under Title I); Meléndez-González v. Oficina de Administración de los Tribunales, 218 F.Supp.2d 227, 229 (D.P.R. 2002) (Title II does not cover claims of disability discrimination in the employment context); and Skidmore v. American Airlines, 198 F.Supp.2d 131, 134 (D.P.R. 2002)("employment discrimination claims, such as the ones brought by Plaintiffs, are covered by Title I").

Other courts have held likewise. For example, in Zimmerman v. Oregon Dept. of Justice, 170 F.3d 1169 (9th Cir. 1999), reh'g en banc denied, 183 F.3d 1161, and cert. denied, 531 U.S. 1189 (2001), the court reasoned that Title II's provision that no qualified individual shall, by reason of disability, be excluded from the services, programs, or activities of a public entity applied only to the "outputs" of a public agency, not to "inputs" such as employment. The court clarified that the adjoining clause—that no qualified individual with a disability shall,

by reason of such disability, be subjected to discrimination by any such entity—related back to the same "services, programs, or activities" of a public entity covered by the first clause. Thus, the court concluded that employment by a public entity is not a "service, program, or activity" of a public entity within the meaning of Title II of the ADA. See also Currie v. Group Ins. Com'n, 147 F.Supp.2d 30, 34 (D.Mass. 2001); Motzkin v. Trustees of Boston University, 938 F.Supp. 983 (D.Mass. 1996); Patterson v. Illinois Dept of Corrections, 35 F.Supp.2d 1103 (C.D.Ill. 1999); and Decker v. University of Houston, 970 F. Supp. 575, (S.D. Tex. 1997), aff'd without published op, 159 F.3d 1355 (all holding that Title I is the exclusive remedy for employment discrimination claims).

     Based on these reasons, the Court concludes that Sánchez's invocation of Title II of the ADA is inapposite to the facts alleged in her complaint. Similarly, as Sánchez's claims under the Rehabilitation Act of 1973 are analogous to her claims under Title II of the ADA, they are also deemed immaterial to the facts of this case. See Theriault v. Flynn, 162 F.3d 46, 48 n.3 (1st Cir. 1998).

     Therefore, her claims under both Title II of the ADA and the Rehabilitation Act must be **DISMISSED WITH PREJUDICE**.

## C. Section 1983 Claims

     In her complaint Sánchez also asserts a claim under Section 1983, which provides a private cause of action against any person who, acting under the color of state law, deprives any citizen of his or her rights, privileges or immunities secured by the U.S. Constitution. 42 U.S.C. sec. 1983. Sánchez's Section 1983 claim is predicated on Defendants' alleged violations of the First Amendment, as well as the Equal Protection and Due Process clauses of the Fourteenth Amendment. Before delving into the constitutional claims, the Court will address Defendants' argument that Sánchez's spouse, José Ramos-Dieppa, lacks standing to sue in this case under Section 1983.

### i.   Ramos and the Conjugal Partnership's Standing to Sue

     Defendants' posit that Sánchez's Spouse, José Ramos-Dieppa, and the conjugal partnership established between them, lack standing to sue for

the alleged violation of Sánchez's constitutional rights. They are correct.

Article III of the United States Constitution limits standing in federal courts to persons who have suffered an injury in fact; recovery is not ordinarily permitted for the injury of another. Allen v. Wright, 468 U.S. 737, 751 (1984). A claim under Section 1983 must allege an injury to a cognizable interest, and that injury must be "causally connected to the challenged conduct" such that the injury may be addressed by the litigation in question. Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006). This Court has held "that actions under § 1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights." González-Droz v. González-Colón, 717 F.Supp.2d 196, 205-06 (D.P.R. 2010). As a result, "family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship." Id.

In light of the above, it is evident that Ramos and the Conjugal Partnership cannot bring a valid Section 1983 claim against Defendants, as they have not suffered a deprivation of their own constitutional rights. Hence, Ramos and the conjugal partnership's claims under Section 1983 are **DISMISSED WITH PREJUDICE.**

### ii.   Timeliness of Section 1983 Claims

Defendants also claim that Plaintiff's Section 1983 claims are time-barred. In Puerto Rico, Section 1983 claims are subject to a one-year statute of limitations. Ayala-Sepúlveda v. Municipality of San Germán, --- F.3d ----, 2012 WL 130084, *4 (1st Cir. Jan. 18, 2012). Generally, a Section 1983 claim accrues when the plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt. Morán Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008).

Defendants point out that Sánchez's last transfer was on August 24, 2009 and that she only came to file her complaint a year and three months later on November 4, 2010. Thus, Defendants argue that Sánchez's Section 1983 claims arising from all of her transfers are time barred.

However, the Court again notes that Sánchez has advanced an ongoing hostile work environment claim in her complaint. Reading the facts in the light most favorable to her, the Court takes as true her asseverations of a hostile work environment, and thus the "continuing violation doctrine" discussed in Morgan would seem to apply. Under this doctrine, a plaintiff may incorporate allegations that would otherwise be time-barred if they "are part of the same unlawful employment practice and at least one act falls within the time period." Morgan, 536 U.S. at 122. Although her allegations of harassment are thin, Sánchez alleges that after her interview with El Nuevo Día on December 9, 2009, she has been subject to constant criticism and reprimands for her performance, based on false and unjustified reasons. Sánchez also claims that she was denied several reasonable accommodation requests on February 19, 2010 and September 2, 2010, which would also come within a year of the date she filed her complaint.

Accordingly, the Court declines to dismiss Sánchez's Section 1983 claims on timeliness grounds. Defendants' motion to dismiss on this point is therefore **DENIED.**

### iii. Constitutional Violations

In order to succeed in a Section 1983 claim, Plaintiff must plead and prove three elements: (1) that the Defendants acted under color of state law; (2) that she was deprived of federally protected rights, privileges, or immunities; and (3) that Defendants' alleged conduct was causally connected to the plaintiff's deprivation. Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). The causation element requires that the plaintiff establish (1) that the actions of the defendant deprived the plaintiff of a protected right, and (2) "that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." Concepción v. Municipality of Gurabo, 558 F.Supp.2d 149, 162 (D.P.R. 2007). Moreover, a plaintiff must link each particular defendant to the alleged violation of federal rights. González-Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir. 2005). A plaintiff may do so by indicating any "personal action or inaction [by the defendants] within the scope of [their] responsibilities that would make [them] personally answerable in

damages under Section 1983." <u>Pinto v. Nettleship</u>, 737 F.2d 130, 133 (1st Cir. 1984).

There seems to be no dispute that the actions of Defendants were carried out under the color of state law. Defendants' argument, rather, is that Sánchez's complaint fails to link any specific defendant with a deprivation of a particular constitutional right, privilege or immunity enjoyed by her, thereby failing to establish the causation element. Upon reading her complaint, the Court finds that several of the defendants named by Sánchez have indeed not been linked with any constitutional violation. Sánchez's allegations against defendants Jesus Rivera-Sánchez, Odette Piñeiro-Caballero and Elia Colón-Berlingeri are scant and insufficient to fasten them with liability for creating a hostile work environment. In the case of Colón-Berlingeri, the allegations are non-existent, as her name does not appear anywhere in the complaint except for its caption and the section describing the parties. As to Piñeiro and Rivera-Sánchez, Plaintiff only claims that on one occasion they each ignored her requests for reasonable accommodation. This, by itself, is clearly insufficient to support a hostile work environment claim against these defendants.

Although Sánchez pleads that both Piñeiro and Rivera Sánchez "either instructed, conspired and/or [were] deliberately indifferent to the acts perpetrated on the plaintiff," said allegation is plainly conclusory and thus falls short of establishing a conspiracy. <u>Compl</u>. ¶¶ 61-62. Therefore, the Court will **DISMISS WITHOUT PREJUDICE** the Section 1983 claims against defendants Rivera-Sánchez, Piñeiro and Colón Berlingeri. The Court will now proceed to analyze the remaining issue: whether Sánchez has adequately averred deprivations of any of her rights under the First Amendment, Equal Protection and Due Process clauses.

1. *First Amendment*

Sánchez advances a First Amendment claim arguing that Defendants' continued harassment was a form of punishment for speaking out against the application of Law 7 and the alleged political discrimination practices in the DOE against PDP sympathizers. She contends that said action violated her free speech rights, particularly in the wake of her interview with local daily *El Nuevo Día*, where she denounced the

supposed discriminatory practices at the DOE. Defendants also request this claim be dismissed under the argument that Sánchez's statements are not protected speech under the First Amendment and, in the alternative, that there was a lack of causation between the speech and the adverse employment actions suffered by her. The Court will decline Defendants' request.

"A government employee retains the First Amendment right to speak out, as a citizen, on matters of public concern, so long as the employee's speech does not unduly impede the government's interest, as an employer, in the efficient performance of the public service it delivers through its employees." O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir. 1993). The First Circuit has crafted a three-part test to determine whether a public employee has an actionable claim under the First Amendment. First, a court must ask whether the employee spoke as a citizen on a matter of public concern. Curran v. Cousins, 509 F.3d 36, 45 (1st Cir. 2007). If the first question is affirmatively answered, a Court must then conduct a second step in its inquiry:

> whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

Curran, 509 F.3d at 45 (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). Lastly, the Court must ask whether the plaintiff can show that the protected expression was a substantial or motivating factor in the adverse employment decision. Id.

As reflected on her complaint, Sánchez alleges that Defendants at the DOE employed a scheme where they created a trust position called "staff developers" to replace existing "Auxiliary Superintendents" with loyal PNP supporters, in an effort aimed at discriminating and marginalizing PDP supporters. Compl. ¶ 24. Sánchez maintains that these personnel transactions were illegal, and on December 9, 2009 she provided an interview with El Nuevo Día where she publicly denounced the discriminatory scheme. Compl. ¶ 49. Sánchez had also expressed her

concerns internally through proper channels within the DOE, to no avail. Compl. ¶ 46. In addition, on September 21, 2009 she also made an official complaint to the Puerto Rico Comptroller where she reported "irregularities in the use of property and funds by members of the Caguas Educational Region, including Defendant Morales-Rivera." Compl. ¶ 37. Sánchez also "denounced that equipment and time was being used for political activities and personal business activities, as well as of the fact that Defendant Morales-Rivera used his position to harass and persecute his subordinates." Id.

Proceeding to apply the test, the Court must determine whether in making the above statements Sánchez spoke as a citizen and whether her speech was on a matter of public concern. The Supreme Court has stated that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes. Garcetti, 547 U.S. at 421-22. This is not the case here. Although in her complaint Sánchez recounts statements she made to her supervisors at the DOE regarding her own working conditions, the statements referenced above engender enough matters unrelated to Sánchez's official duties that they can be said to have been made by Sánchez in her capacity as a citizen. Plaintiff made her statements to the Office of the Comptroller of Puerto Rico, a public agency tasked with supervising government entities such as the DOE in their handling of public monies. She also made expressions to El Nuevo Día, a Spanish language daily of wide circulation in Puerto Rico. There can be no doubt that Sánchez intended her comments to be widely disseminated, as she thought they addressed the ongoing troubling practices at the DOE.

The Court also finds that Sánchez's statements to the Puerto Rico Comptroller and to El Nuevo Día were on a matter of public concern. The topic of a public official basing personnel actions, as to non-policymaking employees, on political affiliation rather than merit is a topic of public concern. Curran v. Cousins, 509 F.3d 36, 46 (1st Cir. 2007); see also O'Connor, 994 F.2d at 915 (1st Cir. 1993) ("[A]llegations of improper purchases clearly constituted a matter of legitimate public concern."); Propst v. Bitzer, 39 F.3d 148, 152 (7th Cir. 1994) (holding that allegations of misuse of university funds touched upon matters of public concern); Conaway v. Smith, 853 F.2d 789,

797 (10th Cir. 1988) ("Speech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests."). Thus, there can be no question that comments aimed at revealing misuse of public funds and property, as well as personnel actions based on political considerations, are of legitimate inherent concern to the electorate. Curran, 509 F.3d at 46.

The Second part of the test now directs the Court to determine whether, when balanced against each other, the First Amendment interests of the Plaintiff and the public outweigh the government's interest in functioning properly. Defendants, however, have neglected to address how the DOE's need to function properly outweighs Sánchez's First Amendment interests. In their motion to dismiss, Defendants only maintain that they are allowed to freely reassign Plaintiff for a reasonable term under the Puerto Rico Public Service Act. 3 L.P.R.A. § 1462c. They don't, however, address Sánchez's other claims of harassment and how these acts were necessary for the proper functioning of the DOE. Thus, the Court will settle this point in favor of Sánchez and assumes that her First Amendment rights outbalance the DOE's need to function efficiently.

Lastly, Sánchez must plead sufficient facts to establish that her protected speech was a substantial or motivating factor in the adverse employment actions suffered by her. In her complaint, Sánchez has recounted a broad swath of actions which she claims constitute a hostile work environment. Some of these actions occurred before she made her grievances to the Puerto Rico Comptroller, and some occurred after, which makes it difficult for the Court to ascertain a causal relationship between her speech and the alleged hostile work environment. Nevertheless, Sánchez has alleged that after her comments to the Comptroller, "[t]he Comptroller's Office started an investigation in that region, prompting even more retaliation and harassment from the defendants, in attempt to quiet Plaintiff." Compl. ¶ 37. Sánchez has also alleged that ""[e]ven when her performance has always been of excellence, since her public outcry for the political discrimination taking place at the DOE, Plaintiff has been subject to constant criticism, reprimands for her performance for false and unjustified

reasons. <u>Compl</u>. ¶ 40. Taking these averments as true, it seems evident that Sánchez's maintains that the harassment she was subjected to was motivated in part by her protected speech. The Court feels it would be improper to hold otherwise at this stage of the proceedings, without the benefit of further discovery in this case.

Accordingly, as Sánchez has pleaded a prima facie case under the First Amendment, the Court will **DENY** Defendants' motion to dismiss on this point.

### 2. *Equal Protection*

Plaintiff alleges that Defendants are liable under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, for their alleged acts of discrimination based on her age and gender. However, regarding Sánchez's claim of age discrimination, the First Circuit has held that it is the ADEA which provides the exclusive federal remedy for age discrimination in employment. <u>Tapia-Tapia</u>, 322 F.3d at 745. Thus, Sánchez is not able to advance a valid claim under Section 1983 based on age discrimination, and the Court is left with her Section 1983, equal protection claim based on gender discrimination. Defendants argue that said claim must be dismissed as Sánchez has not alleged any facts reflecting that other individuals at the DOE, similarly situated to her, were treated differently than how she was treated.

In order to establish an equal protection claim, Plaintiff needs to allege facts indicating that, compared with others similarly situated, she was selectively treated "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Rubinovitz v. Rogato</u>, 60 F.3d 906, 910 (1st Cir. 1995). In other words, a plaintiff that claims an equal protection violation must first "identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were 'singled ... out for unlawful oppression.'" <u>Id.</u> (citing <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 19 (1st Cir. 1989)). Discrimination on the basis of sex violates the equal protection clause if the

discrimination fails to "serve important government objectives" and is not "substantially related to achievement of those objectives." Lipsett, 864 F.2d at 896 (quoting Davis v. Passman, 442 U.S. 228, 234-35 (1979)).

The only allegation in the complaint that attempts to evince some type of disparate treatment simply states that "[d]efendants have violated the rules and regulations of the DOE by assigning Plaintiff to a place of work that is outside her residence and/or where her career position is located. These positions have been filled by younger male employees, in a clear discrimination for Plaintiff's age and gender." See Compl. ¶ 31. This, by itself, is insufficient to advance a valid disparate treatment claim under the Equal Protection Clause. Plaintiff's threadbare statement does not relate how those younger male employees were similar to her "in all relevant aspects" and lacks specificity as to which positions were filled by which employees and whether these employees were comparably qualified to Plaintiff. The Court notes that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. This is not a "probability requirement," but it does require "more than a sheer possibility that a defendant acted unlawfully." Id. Here, Sánchez has only presented a sheer possibility that Defendants' discriminatory animus towards her was based on the suspect category of gender. As such, her pleadings are unable to sustain a valid claim of gender discrimination under the equal protection clause, and said claim must be **DISMISSED WITHOUT PREJUDICE.**

### 3. *Due Process*

On the introductory paragraphs of her complaint Sánchez asserts a violation of her rights under the Due Process Clause of the Fourteenth Amendment. Said clause protects persons against deprivation of life, liberty or property without due process of law. U.S. Const. Amend. XIV. The due process guarantee contains both a substantive and procedural component. Harron v. Town of Franklin, 660 F.3d 531, 535 (1st Cir. 2011). Reading the remainder of the complaint, it is unclear under which component Sánchez is bringing her due process claim. She does not mention any of them by name, and thus the Court can only reasonably

Civil No. 10-2083 (PG)                                          Page 27

extract from the complaint a procedural due process claim stemming from
Defendants allegedly depriving Sánchez of her job functions. Defendants
argue said claim must be dismissed as Sánchez's interest in her job
functions is not a protected property interest under the Due Process
Clause. The Court agrees.

"The requirements of procedural due process apply only to the
deprivation of interests encompassed by the Fourteenth Amendment's
protections of liberty and property." Bd. of Regents v. Roth, 408 U.S.
564, 569 (1972). Sánchez alleges that Defendants have harassed her to
the point where she is unable to perform her functions; that she has
been stripped of her functions by Morales-Rivera by "naming two persons
to one position;" and that "no duties or responsibilities were assigned
to her until the situation was supposedly solved by Human Resources."
See Compl. ¶¶ 41, 42. The question before the Court then is whether
Sánchez has a protected property interest in her job duties and
responsibilities. Said question is answered by looking to state law.
Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000).
Unfortunately for Sánchez, under Puerto Rico law one's interest in the
functions of their job does not constitute a protected property interest
for purposes of a due process analysis. See Educación Superior de la
Universidad de P.R. v. Rosselló González, 137 P.R. Dec. 83, 110, 1994
J.T.S. 125 (1994) see also Rosado de Vélez v. Zayas, 328 F. Supp. 2d
202, 212 (D.P.R. 2004); (indicating that "under Puerto Rico law, public
employees have a property interest in their continued employment, not in
the functions they perform."); accord Ruiz-Casillas v. Camacho-Morales,
415 F.3d 127, 134 (1st Cir. 2005). As a result, Sánchez's due process
claim stemming from the privation of her job duties must fail and be
**DISMISSED WITH PREJUDICE** by this Court.

### D. Qualified Immunity

Defendants next argue that they are entitled to qualified immunity
on the grounds that Plaintiff has failed to establish a violation of law
by Defendants, and that in any case, Plaintiff failed to casually link
any Defendant with any violation of a right, immunity or privilege
enjoyed by Plaintiff.

"Long-standing principles of constitutional litigation entitle

public officials to qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions." Glik v. Cunniffe, 655 F.3d 78, 81 (1st Cir. 2011). The qualified immunity inquiry is a two-part test. A court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation. Air Sunshine, Inc. v. Carl, 663 F.3d 27, 32-33 (1st Cir. 2011)(citations omitted); see also Pearson v. Callahan, 555 U.S. 223 (2009).

As discussed above, Sánchez was able to plead sufficient facts to establish a prima facie violation of the First Amendment. Thus, the Court must now decide whether said First Amendment right was "clearly established" at the time Defendants' allegedly violated it. Given the Court's previous discussion on Sánchez's First Amendment claims, there is no question that the same have been considered actionable violations of the First Amendment for quite some time. Most of the cases cited by the Court have been on the books long before the events that gave rise to Sánchez's complaint. Consequently, Sánchez's right to speak out against the practices of Defendants was clearly established at the time of her hostile work environment, and therefore Defendants' motion to dismiss due to qualified immunity must be **DENIED.**

## E. Sovereign Immunity

Finally, Defendants request the Court dismiss all claims for money damages against the DOE, on the grounds that as an instrumentality of the Commonwealth, it enjoys protection by the Eleventh Amendment.

The Eleventh Amendment bars federal courts from entertaining actions against non-consenting states, including the Commonwealth of Puerto Rico. Seminole Tribe v. Florida, 517 U.S. 44 (1996); Ezratty v. Commonwealth of P.R., 648 F.2d 770, 776 n. 7 (1st Cir.1981). The scope of protection afforded to the Commonwealth is broad. The Eleventh Amendment extends not only to state agencies acting as alter egos of the state but also to state employees exercising their official duties. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State

itself." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (citation omitted). In <u>Edelman v. Jordan</u>, 415 U.S. 651, 677 (1978), the Supreme Court held that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury." (citations omitted).

Therefore, Plaintiff cannot recover a retroactive monetary award against the DOE; she is only entitled to prospective injunctive relief against such agency. The Court will thus **DISMISS WITH PREJUDICE** her claims for money damages against the DOE and the individual defendants in their official capacity.

### F. Supplemental Law Claims

As Sánchez's First Amendment claim has survived Defendants' motion to dismiss, the Court will retain jurisdiction over the Puerto Rico law claims.

### IV.   Conclusion

For the aforementioned reasons, the Court hereby **DISMISSES WITH PREJUDICE** the following claims against Defendants: (1) Sanchez's claims under Title VII, Titles I and II of the ADA and the AEDA; (2) her claim under the Due Process Clause of the Fourteenth Amendment; and (3) her claims for money damages against the DOE and the individual defendants in their official capacities.

The following claims against Defendants are **DISMISSED WITHOUT PREJUDICE**: (1) Plaintiff's hostile work environment claim under Title VII, Title I of the ADA, and the ADEA; (2) her Section 1983 claim under the Equal Protection Clause; and (3) her claims against defendants Rivera-Sánchez, Piñeiro and Colón-Berlingeri.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, February 1, 2012.


<u>s/ Juan M. Pérez-Giménez</u>
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**